56 F.3d 65
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Charles W. O'BRIEN, Defendant-Appellant.
 No. 94-3341.
 United States Court of Appeals, Sixth Circuit.
 May 30, 1995.
As Amended June 8, 1995.
 
 Before: KEITH, MARTIN and SILER, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Defendant-Appellant Charles W. O'Brien ("O'Brien") appeals his conviction and sentence for bank fraud and money laundering. O'Brien argues the district court made a number of errors which denied him the right to a fair trial. For the reasons stated below, we AFFIRM O'Brien's conviction and sentence.
 
 I. Statement of the Case
 A. Procedural History
 
 2
 On September 16, 1992, a five-count indictment was handed down by a Federal Grand Jury for the Northern District of Ohio against O'Brien[1] and Tammy M. Cordell ("Cordell"). Count One of the indictment charged O'Brien and Cordell with conspiracy to commit bank fraud and money laundering, in violation of 18 U.S.C. Sec. 1344, Sec. 371 and Sec. 1956(a)(1)(B)(i). Count Two of the indictment charged O'Brien and Cordell with bank fraud, in violation of 18 U.S.C. Sec. 1334 and Sec. 2. Counts Three and Four of the indictment charged O'Brien with money laundering, in violation of 18 U.S.C. Sec. 1344 and Sec. 1956(a)(1)(B)(i). Count Five of the indictment charged O'Brien with obstruction of justice by witness tampering, in violation of 18 U.S.C. Sec. 1512(b)(3).
 
 
 3
 From October 29, 1992, to June 15, 1993, O'Brien requested and received five continuances of the trial. On July 12, 1993, the government requested and received a continuance of the August 10, 1993, trial date. The trial was finally set for October 19, 1993.
 
 
 4
 O'Brien moved for another continuance on September 30, 1993, which was denied by the district court, on October 13, 1993. O'Brien again requested another continuance, on the first day of trial, which was denied by the district court.
 
 
 5
 The trial began on October 19, 1993, and continued until October 27, 1993. On October 27, 1993, the jury returned guilty verdicts as to Counts One, Two, Three and Four. The jury found O'Brien not guilty on Count Five of the indictment.
 
 
 6
 O'Brien's offense level was set at 24 and his criminal history category was set at I. The guideline range was determined to be 51 to 63 months. O'Brien's offense level of 24 reflected a two-point increase for being the leader of fewer than five participants under USSG Sec. 3B1.1(c), obstruction of justice under USSG Sec. 3C1.1, and more than minimal planning under USSG Sec. 2F1.1(b)(2)(A). On January 21, 1994, the district court sentenced O'Brien to 54 months in prison and ordered him to pay $250,000 restitution to the victim Society National Bank ("Ameritrust").
 
 
 7
 O'Brien filed a motion for a new trial on January 28, 1994. The district court denied this motion on March 21, 1994.
 
 
 8
 O'Brien filed this timely notice of appeal.
 
 B. Statement of Facts
 
 9
 O'Brien and his many businesses have been long time clients of Ameritrust. At the time of his alleged crime, he had accumulated more than four million dollars of debt to Ameritrust through multiple loans from Ameritrust.
 
 
 10
 In June of 1990, Ameritrust loaned $250,000 to two of O'Brien's corporations, which was secured by a mortgage on a house owned by O'Brien in Sandusky, Ohio. In late August 1990, problems in the Ameritrust/O'Brien relationship began to arise. Those problems resulted from O'Brien's failure to provide requested financial information, overdrafts on existing accounts and the fact some of the other loans were past due. O'Brien agreed with Ameritrust to sell the Sandusky property to pay off the $250,000.
 
 
 11
 Ameritrust alleges they then discovered the Sandusky house had been sold without their knowledge and without their receiving the money from the sale. This was allegedly accomplished by O'Brien fraudulently inducing Ameritrust, through the use of aliases and false representations, into releasing the mortgage on the Sandusky home.
 
 
 12
 The name William Davis appears on a number of the documents involved in the release of the mortgage. Ameritrust asked O'Brien about William Davis and where he could be found on a number of occasions during their investigation into the release. Each time, O'Brien replied he did not know William Davis' whereabouts. During Ameritrust's investigation into the release, Ameritrust and O'Brien continued to negotiate with regard to the remaining $4.4 million in loans O'Brien had outstanding with Ameritrust.
 
 
 13
 On September 16, 1993, one month before the start of the trial, the United States Attorney for the Southern District of Ohio seized O'Brien's home and office pursuant to a court ordered civil forfeiture action in the Southern District of Ohio. The seizure resulted in all property and documents found in the home or office being seized. O'Brien's attorney claimed approximately 70% of her trial preparation material was kept at O'Brien's home. These items included correspondence, trial preparation notes, witness notebooks, legal analysis, proposed jury instructions, subpoenas, exhibit lists and allegedly exculpatory documents.
 
 
 14
 O'Brien and his counsel were given the opportunity to retrieve the seized documents from the United States Attorney for the Southern District of Ohio. No request for the material was made until the day before the trial was scheduled to begin. The only action taken by O'Brien and his counsel was to file a motion for a continuance or in the alternative for dismissal of the charges.
 
 II. Discussion
 
 15
 The multiple errors O'Brien accuses the district court of committing were for the most part self-inflicted. O'Brien, because he had spent two years in law school, exercised a great deal of control over the manner in which his defense was conducted. O'Brien insisted the information used to conduct his defense be kept at his home, he refused to allow his counsel to make any effort to obtain the trial material seized by the U.S. Attorney for the Southern District of Ohio and he refused to give his counsel any information about the expert witness he intended to call at trial.
 
 
 16
 O'Brien claims the district court abused it discretion by failing to either dismiss the indictment or grant him a continuance. The evidence presented both at trial and on appeal failed to show any abuse of discretion by the district court. The evidence clearly shows O'Brien and his counsel made a strategic choice not to request the seized information in an effort to force the district court to grant their motion for a continuance.
 
 
 17
 O'Brien also claims he received ineffective assistance of counsel. O'Brien argues his counsel was not effective because she kept all of the trial preparation materials at his home and refused to push for the return of those materials after they were seized. However, the record clearly reflects O'Brien manipulated both his counsel and the district court into acting as he desired. O'Brien made the decision to keep the documents at his home, as well as the decision not to seek the return of the seized material until just before trial. O'Brien's conduct in this trial is a classic example of how a "little knowledge can be a dangerous thing."
 
 III. Conclusion
 
 18
 For the reasons stated above, we AFFIRM O'Brien's conviction and the sentence imposed by the Honorable Sam H. Bell, United States District Judge for the Northern District of Ohio.
 
 
 
 [1]
 O'Brien also used the following aliases: 1. Bill O'Brien, 2. William Davidson and 3. Dan Davidson